UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDAN HUERTA,<br><br>  Plaintiff,<br><br> v.<br><br>AKIMA FACILITIES MANAGEMENT, LLC,<br><br>  Defendant. | Case No. 16-cv-00434-KAW<br><br>**ORDER DENYING MOTION TO DECLINE SUPPLEMENTAL JURISDICTION**<br><br>Re: Dkt. No. 81 |

Plaintiff Brendan Huerta brings the instant action against Defendant Akima Facilities Management LLC, alleging that he was injured while delivering a piece of heavy equipment to a laboratory facility that Defendant managed. (First Amended Compl. ("FAC") ¶¶ 2, 15-21.) Pending before the Court is Plaintiff's motion requesting that the Court decline to exercise supplemental jurisdiction over the state law claims. (Plf.'s Mot., Dkt. No. 81.)

The Court deems the matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b) and VACATES the hearing set for November 16, 2017. Having considered the papers filed by the parties and the relevant legal authority, the Court DENIES the motion, for the reasons set forth below.

## I.   BACKGROUND

On February 6, 2014, Plaintiff delivered heavy equipment to a United States Department of Agriculture ("USDA")/Agricultural Research Service ("ARS") in Albany ("Subject Premises"). (FAC ¶ 15.) Plaintiff was assisted by Doe 1, who was either an employee of USDA and/or ARS, or the government contractor responsible for facility operations at the ARS facility.[1] (FAC ¶ 16.)

---

[1] Plaintiff asserts that Doe 1 is Mr. Willard Davis, an employee of Defendant Akima at the time of the incident. (Joint Supp. Brief at 4 fn. 1, Dkt. No. 88.)

1  Plaintiff alleges that Defendant is the government contractor. (FAC ¶ 17.) The equipment was to be lowered from the truck to a lift gate, but while lowering the lift gate, Doe 1 suddenly and abruptly stopped the lift gate. (FAC ¶ 20.) The sudden stop caused the equipment to become unstable and fall onto Plaintiff, who was unable to get out of the way in time. (FAC ¶¶ 20-21.) As a result, Plaintiff suffered serious bodily injuries. (FAC ¶ 21.)

Plaintiff then brought this suit against the USDA and ARS, as well as Doe defendants. (*See* Compl., Dkt. No. 1.) On August 12, 2016, Plaintiff filed a first amended complaint, substituting Defendant in place of Doe Defendant 2. (FAC ¶ 2.) Plaintiff asserted federal question jurisdiction based on the Federal Torts Claim Act. (FAC ¶ 12.) Plaintiff brought claims of: (1) negligence as to Doe 1; (2) vicarious liability as to the federal entities; (3) negligent hiring, training, and/or retention of unfit employee as to the federal entities; (4) vicarious liability as to Defendant; (5) negligent hiring, training, and/or retention of unfit employee as to Defendant; and (6) premises liability as to the federal entities and Defendant. Defendant was served on September 12, 2016. (Dkt. No. 37.)

On October 11, 2016, the USDA and ARS filed a motion to dismiss. (Dkt. No. 38.) The USDA and ARS filed a declaration identifying Mr. Willard Davis as Doe 1. (Dixson Decl. ¶ 11, Dkt. No. 38-1.) On October 28, 2016, Plaintiff and the USDA and ARS stipulated to dismissal of the federal defendants. (Dkt. Nos. 40, 41.) Plaintiff then moved for entry of default as to Defendant Akima, and entry of default was entered on November 22, 2016. (Dkt. Nos. 44, 46.) On December 12, 2016, Plaintiff moved for default judgment. (Dkt. Nos. 47, 50.)

On December 29, 2016, Defendant filed a motion to set aside the entry of default, explaining that its failure to respond to the first amended complaint was a result of an operating system upgrade. (Dkt. No. 55 at 4.) On March 1, 2017, the Court granted Defendant's motion to set aside default and denied Plaintiff's motion for default judgment as moot. (Dkt. No. 70 at 1-2.)

On March 21, 2017, the parties filed a joint case management conference statement, identifying the basis of jurisdiction as diversity jurisdiction. (Dkt. No. 72 at 1.) On March 28, 2017, the Court conducted a case management conference, setting deadlines for initial disclosures and the amendment of the complaint. (Dkt. No. 74.) On September 5, 2017, the parties filed a

2

second joint case management conference statement, again asserting diversity jurisdiction. (Dkt. No. 79 at 1.) Plaintiff also asserted that he did not anticipate amending the pleadings. (*Id.* at 3.) On September 12, 2017, the Court conducted a further case management conference, in which the Court discussed jurisdiction, and was informed that it was no longer an issue. The Court also raised Plaintiff's statement that he did not anticipate amending the pleadings, but stated that it would set an amendment deadline of November 13, 2017 as a control date. Defendant also stated that the parties were scheduling depositions for both Plaintiff and Mr. Davis.

On September 18, 2017, Plaintiff filed the instant motion requesting that the court decline to exercise supplemental jurisdiction over the state law claims, so that Plaintiff could re-file the instant case in state court. On October 9, 2017, Defendant filed its opposition, on the ground that diversity jurisdiction existed in the case. (Def.'s Opp'n, Dkt. No. 85.) On October 10, 2017, Plaintiff filed his reply, arguing that although he could have alleged diversity jurisdiction, he had not. (Plf.'s Reply, Dkt. No. 86.) On October 13, 2017, the Court ordered the parties to file a joint supplemental brief on whether Defendant Akima would be prevented from removing the case on the basis of diversity jurisdiction if the Court was to decline exercise supplemental jurisdiction over the state law claims. (Dkt. No. 87.) On October 26, 2017, the parties filed a joint supplemental brief, in which Plaintiff raised the possibility of actually naming Mr. Davis in the place of Doe 1, which would potentially destroy diversity jurisdiction because Plaintiff believed Mr. Davis was a California citizen. (Dkt. No. 88 at 3.) As of the date of this order, Plaintiff has not moved to substitute Mr. Davis into the case, and the deadline for amendment has passed.

## II.  LEGAL STANDARD

In general, a federal court must have federal question or diversity jurisdiction over a case. Per 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. §1367(c)(3), however, permits a district court to decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." While 28 U.S.C. § 1367(c) permits dismissal of state law claims when federal

3

claims are dismissed before trial, it does not mandate dismissal. *Acri v. Varian Assocs.*, 114 F.3d 999, 1000 (9th Cir. 1997). In determining whether to dismiss supplemental claims, the district court considers the following *Gibbs* factors: judicial economy, convenience, fairness, and comity. *Acri*, 114 F.3d at 1001; *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

### III.  DISCUSSION

#### A.  Original Jurisdiction

Here, Plaintiff asserts that the Court should exercise its discretion to decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(3). (Plf.'s Mot. at 4.) Again, for 28 U.S.C. § 1367(c)(3) to apply, the Court must have dismissed all claims over which it has original jurisdiction. Here, the parties do not appear to dispute that the requirements of diversity jurisdiction are met, *i.e.*, the presence of diverse parties and an amount in controversy over $75,000. Indeed, the parties submitted two joint case management statements identifying diversity jurisdiction as the jurisdictional basis of this case. (Dkt. No. 72 at 1 ("Plaintiff alleges that the Court has jurisdiction pursuant to 28 U.S.C. § 1332, in that there exists complete diversity of citizenship and the amount in controversy is in excess of $75,000"); Dkt. No. 79 at 1 (same).) The Court also specifically raised the jurisdiction issue at the September 12, 2017 further case management conference, and was informed that it was not an issue. Despite these repeated acknowledgments that diversity jurisdiction exists, Plaintiff now argues that because he did not explicitly plead diversity jurisdiction, diversity jurisdiction does not exist. (Plf.'s Reply at 2.)

The Court disagrees. As an initial matter, the cases relied upon by Plaintiff focus not on whether diversity jurisdiction must be explicitly plead to be invoked, but on res judicata. In *Shaver v. F.W. Woolworth Co.*, the plaintiff filed suit in federal court, asserting a federal Age Discrimination in Employment Act ("ADEA") claim and pendent state claims. 840 F.2d 1361, 1363 (7th Cir. 1988). The district court granted the defendant's motion for summary judgment on the ADEA claim, and declined to exercise pendent jurisdiction over the remaining claims. The plaintiff did not attempt to allege diversity jurisdiction for his state claims, nor did he appeal. Instead, the plaintiff filed a second lawsuit in state court, asserting claims based on the same operative facts as his original suit. The defendant then removed the case based on diversity

4

jurisdiction, and sought dismissal under res judicata. *Id.* The Seventh Circuit concluded that res judicata applied, explaining that the two cases involved identical causes of action because they were based on a "single core of operative facts." *Id.* at 1365. To avoid the application of res judicata, the plaintiff argued that requiring him to allege the possible existence of diversity jurisdiction after the federal claims were dismissed was contrary to the federal policy of leaving state law questions to the state court. *Id.* The Seventh Circuit disagreed, finding that the purpose of res judicata -- to avoid a multiplicity of proceedings, which could have the effect of harassing defendants and wasting judicial resources -- supported joining all claims rather than splitting his claims. *Id.* at 1366.

Relying on *Shaver*, the First Circuit in *Kale v. Combined Insurance Co.* came to the same conclusion regarding the applicability of res judicata. 924 F.2d 1161 (1st Cir. 1991). Like *Shaver*, *Kale* involved a plaintiff who brought an ADEA claim in federal court, along with pendent state law claims. *Id.* at 1163. The *Kale* plaintiff asserted only federal question jurisdiction. After the ADEA claim was dismissed, the district court dismissed the state cause of action. Although the plaintiff knew that diversity of citizenship existed, the plaintiff made no attempt to assert diversity jurisdiction, and only appealed the dismissal of the ADEA claim. The plaintiff then brought a new case in state court, alleging only the state law claims, and the defendant removed the case on the basis of diversity jurisdiction. *Id.* at 1164. On the defendant's motion, the case was dismissed on res judicata grounds. The First Circuit affirmed, finding that the requirements of res judicata were satisfied and citing *Shaver* in support. *Id.* at 1165-67; *see also Maher v. GSI Lumonics, Inc.*, 433 F.3d 123, 126-27 (1st Cir. 2005).

Ultimately, these cases focus on the applicability of res judicata, not on whether diversity jurisdiction must be alleged in order for diversity jurisdiction to actually exist. Instead, each case involved a plaintiff who could have asserted diversity jurisdiction but did not, instead choosing to file a new suit based on the same operative facts, only to have res judicata applied against their claims. This is not the same as requiring a plaintiff to assert diversity jurisdiction in order to create diversity jurisdiction; rather, each of the plaintiffs permitted their suits to be dismissed when they should not have, thus triggering res judicata.

Even if these cases stood for the proposition Plaintiff asserts, the cases are not binding on this Court. Instead, the Court finds *Jacobs v. Patent Enforcement Fund, Inc.* more persuasive and on point. There, the plaintiffs brought a diversity action and obtained a default judgment against the defendant. 230 F.3d 565, 566 (2d Cir. 2000). The defendants appealed the default judgment, and the adequacy of the diversity jurisdiction allegations was raised for the first time by the Second Circuit. *Id.* at 567. The plaintiffs filed affidavits showing that diversity jurisdiction existed, requiring the Second Circuit to determine whether the "plaintiffs may cure the defect in their pleadings at this late stage without unsettling the judgment reached earlier in the case." *Id.* The Second Circuit concluded that the plaintiffs could because "while a complaint must present certain quite particular allegations of diversity jurisdiction in order to be adequate, the actual *existence* of diversity jurisdiction, *ab initio*, does not depend on the complaint's compliance with these procedural requirements." *Id.* at 567-68. The Second Circuit reasoned that this was "the only conclusion consistent with the established practice that when a defendant moves . . . to dismiss a complaint that inadequately pleads diversity jurisdiction . . . then the court may either deny the motion and direct the pleader to amend, or it may dismiss with leave to amend." *Id.* at 568 (internal quotation omitted). The Second Circuit further explained that "[i]f adequate pleadings of diversity were themselves an essential element of diversity jurisdiction, then the first of these alternatives could not be available to the courts, for they would have no jurisdiction on which to base their orders to amend and could not create jurisdiction *nunc pro tunc* . . . ." *Id.* Thus, the Second Circuit held that "the defect in plaintiffs' pleadings does not negate jurisdiction and that, since it has been established that the requisite diversity existed at the time of the initial pleadings, defendant . . . was bound to answer the complaint, and the judgment of default that issued on its failure to do so is not void for lack of jurisdiction." *Id.* Recently, *Jacobs* has been cited positively by the Ninth Circuit for the proposition that the existence of diversity jurisdiction does not depend on compliance with procedural requirements, a principle that "is consistent with a court's authority -- upon a motion to dismiss for lack of jurisdiction -- to direct the plaintiff to amend." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 613 (9th Cir. 2016).

As applied in the instant case, the fact that Plaintiff did not affirmatively assert diversity

jurisdiction in his complaint does not mean that diversity jurisdiction does not exist; the actual existence of diversity jurisdiction is not dependent on compliance with the procedural requirements. Instead, like *Jacobs*, there is evidence in the record that the requirements of diversity jurisdiction were satisfied at the onset of this case; the parties are diverse,[2] and Plaintiffs' complaint incorporates a claim for damages in excess of $250,000, well over the $75,000 jurisdictional requirement. (FAC, Exh. B at 2.) Thus, even if the complaint does not satisfy the procedural requirements, Plaintiff could be directed to amend the complaint to assert the requirements of diversity jurisdiction, which neither party disputes exists.[3]

---

[2] Plaintiff's complaint asserts that Plaintiff is a resident of California, and Defendant Akima submits a declaration from its Senior Corporate Counsel, stating that its principal place of business and headquarters are located in Virginia while the sole member of Akima LLC are Alaska entities. (Steinberg Decl. ¶¶ 2-4, Dkt. No. 85-2.) Plaintiff provides no evidence in dispute, and, again, previously asserted diversity jurisdiction in case management conference statements filed in this case.

[3] Notably, the First Circuit has also permitted *defendants* to move "to cure the defective jurisdictional allegations of a complaint filed against them in a federal district court," relying on the former 28 U.S.C. § 399, which stated:

> Where, in any suit brought in or removed from any State court to any district of the United States, the jurisdiction of the district court is based upon the diverse citizenship of the parties, and such diverse citizenship in fact existed at the time the suit was brought or removed, though defectively alleged, either party may amend at any stage of the proceedings and in the appellate court . . . so as to show on the record such diverse citizenship and jurisdiction, and thereupon such suit shall be proceeded with the same as though the diverse citizenship had been fully and correctly pleaded at the inception of the suit, or, if it be a removal case, in the petition for removal.

*Keene Lumber Co. v. Leventhal*, 165 F.2d 815, 819 (1st Cir. 1948). The First Circuit reasoned that "if the requisite diversity of citizenship in fact exists either party may have a legitimate interest in obtaining a determination of the controversy in this proceeding, instead of having the complaint dismissed for a merely technical defect." *Id.* Moreover, the First Circuit explained that "[t]he plaintiff having in this case invoked the federal jurisdiction and having pressed its case in the District Court and here on the merits, we see no reason why the plaintiff, because it happens to suit its strategic purposes, should have the exclusive power to make the proceeding go for nought by declining to correct a purely technical defect in the record." *Id.*

28 U.S.C. § 399 has since been incorporated into 28 U.S.C. § 1653, which states: "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." While 28 U.S.C. § 1653 does not explicitly permit either party to amend jurisdictional allegations, there is no indication that the revision was designed to remove a defendant's ability to do so. Indeed, the

7

Because diversity jurisdiction exists in this case, the Court concludes that 28 U.S.C. § 1367(c)(3) does not apply as the Court has original jurisdiction over the state law claims. Therefore, the Court lacks discretion to decline supplemental jurisdiction over the state law claims.

**B.  Discretionary Factors**

Even assuming that 28 U.S.C. § 1367(c)(3) did apply, the Court concludes that after applying the *Gibbs* factors, the Court would still retain supplemental jurisdiction over this case.

First, the Court considers judicial economy. There has been relatively little discovery, and no motions on the merits. On the other hand, this case has been pending in federal court for close to two years, having been filed in January 2016, and has involved motions to set aside default, case management conferences, discussions of alternative dispute resolution, and scheduling.[4] The Court concludes that this factor favors declining supplemental jurisdiction, but not strongly.

Second, the Court considers convenience. Plaintiff does not explain why this factor supports declining supplemental jurisdiction, and the Court finds that it is neutral. The Court notes it is not clear declining supplemental jurisdiction would be convenient to the parties if Plaintiff was to re-file the instant case in state court, only to have the case be removed to federal court by Defendant per diversity jurisdiction, which Defendant states that it would.[5]  (Joint Supp. Brief at 6.)

Third, the Court considers fairness. This factor weighs strongly in favor of retaining supplemental jurisdiction. As an initial matter, again, the Court finds that diversity jurisdiction exists in this case. Plaintiff has acknowledged the existence of diversity jurisdiction, and litigated

---

language is broad enough to apply to both defendants and plaintiffs.

[4] The Court was prepared to file an order setting trial dates, but refrained from doing so pending the outcome of this motion.

[5] While Plaintiff asserts that he might add Mr. Davis, which may destroy diversity jurisdiction, this is a theoretical argument. Moreover, as Plaintiff acknowledges, Plaintiff has been aware of Mr. Davis's identity since at least October 2016, yet never moved to substitute him in place of Doe 1, and in fact has disclaimed any intent to amend his complaint. (Dkt. No. 79 at 3.)  And, as mentioned above, the time for amendment has passed.

8

the case accordingly in the year since the federal entities were dismissed from the case. Waiting over a year to disclaim diversity jurisdiction, only to now do so with the stated intent of re-filing the same case in state court, is unfair to Defendant. Further, while Plaintiff asserts that he is not attempting to forum shop, it appears to the Court that this is precisely what Plaintiff is engaged in, as he states that he wishes to litigate in state court because his counsel has more experience in state court. (Plf.'s Mot. at 7.) It is unclear to the Court how this is not the very definition of forum shopping. *Compare with Wireless Consumers All., Inc. v. T-Mobile USA, Inc.*, No. C 03-3711 MHP, 2013 WL 22387598, at *6 (N.D. Cal. Oct. 14, 2013) (finding forum shopping where the plaintiff sought to avoid local rules by filing for the same group of plaintiffs in a different court). The Court concludes that this factor strongly favors retaining supplemental jurisdiction.

Finally, the Court considers comity between state and federal court. In general, "needless decisions of state law should be avoided both as a matter of comity" and to promote "a surer-footed reading of applicable law." *Gibbs*, 383 U.S. at 726. Here, the claims at issue are state law claims. At the same time, the state law claims do not appear to involve novel issues of state law, whereas Defendant Akima asserts that potential defenses based on federal law may apply as the incident occurred on federal property and Defendant Akima is a federal contractor. (Def.'s Opp'n at 5 (citing authority concerning derivative absolute immunity from tort suits for federal contractors).) Such defenses would implicate federal law. Thus, given this unusual intersection of state claims and federal defenses, the Court finds that this factor favors retaining supplemental jurisdiction.

The Court concludes that these four factors favor retaining supplemental jurisdiction over this case under 28 U.S.C. § 1367(c)(3).

///
///
///
///
///
///

9

## IV. CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's motion requesting that the Court decline to exercise supplemental jurisdiction over the instant case.

IT IS SO ORDERED.

Dated: November 15, 2017

_____
KANDIS A. WESTMORE
United States Magistrate Judge